318

EARLY ESTATES, INC. *vs.* MICHAEL N. CARDARELLI,
*City Treas., et al.*

FEBRUARY 5, 1959.

PRESENT: Roberts, Paolino and Powers, JJ.

POWERS, J. This bill in equity was brought to have declared unconstitutional and void a certain regulation of the water supply board of the city of Providence relating to the location of water meters. After a hearing in the superior court on bill, answer and proof, the trial justice entered a decree denying and dismissing the bill. The cause is before us on the complainant's appeal from that decree.

It appears from the evidence that complainant is the owner of a wooden building in the city of Providence which is used as a factory. On March 12, 1913 a fire sprinkler system was installed in the building and is still in use. At that time and for years thereafter water was supplied to the system by the city without the use of a meter. However, on January 1, 1945 the water supply board revised its rules and regulations and under the provisions thereof it was required that all water services be metered.

The pertinent provisions of Section 6 of the 1945 regulations with reference to meters are as follows:

"All fire supplies shall be metered and conform to the provisions of Section 2 entitled 'Meters', with the following exceptions:

"a. The owner may purchase and install the meter, as directed by the Water Supply Board, provided it is a type of meter approved by said Board and the National Board of Fire Underwriters.

"b. The owner may install an approved detector check type of meter, but the Water Supply Board reserves the right to require the owner to install a full flow fire line meter as described in the preceding paragraph (a).

> "Property owners whose present fire supply systems do not conform to these regulations will be granted 24 months from the date of issuance of these Rules and Regulations to revise their systems.
>
> "For any violation of the rules governing fire supplies, the Water Supply Board may discontinue the service immediately."

Section 2 of such regulations pertaining to the location of meters reads as follows:

> "The property owner shall furnish a proper place for the installation of the meter in a horizontal position not more than seventy-five (75) feet from the building line, just inside and as near as possible to the point of entry of the service pipe through the building wall. In the event that such a location cannot be provided, the meter will be installed at the building line in a suitable housing or pit, provided and maintained at the expense of the property owner."

The complainant introduced in evidence exhibit B, a schedule of water rates effective on or about May 1, 1934, the provisions of which required that all meters "located 50 feet or more back of street line must be supplied through pipe that is satisfactory to the Commissioner, or set in a pit inside and adjacent to the street line."

The testimony and exhibits indicate that for a number of years no steps were taken by complainant to comply with the regulation effective January 1, 1945 requiring fire supply services to be metered. The complainant's exhibit J dated October 15, 1951 is a letter from the Rhode Island Supply and Engineering Co. informing counsel for complainant that the cost of installing the detector check valve and meter requested would be $716.80 net, and there is no evidence of negotiations prior thereto.

It appears that early in January 1957 complainant approached the D. & H. Plumbing & Heating Co. with the intention of engaging it to install a detector check valve and meter. William F. Degnan, a partner in the company, inspected the premises and found that the water pipe was

six inches where it entered complainant's land, but four inches at the point where it entered the building. He inquired of Wayland P. Ingham, an engineer employed by the water supply board, whether or not it would be permissible to install "a four inch meter check and a 1½ by-pass meter instead of a six inch," considering that the pipe entering the building was four inches. Having been advised that in the circumstances such an installation would be proper, the D. & H. Plumbing & Heating Co. submitted a price of $595. The estimate given by the Rhode Island Supply and Engineering Co. in 1951 was based on the assumption that the meter would attach to a six-inch pipe.

The witness Ingham testified that every application for a plumber's permit is accompanied by a plan describing the equipment to be installed and showing the place of installation. On January 30, 1957 an application for a plumber's permit, accompanied by a plan, was submitted by the D. & H. Plumbing & Heating Co., at which time it was discovered by the chief engineer of the board that complainant's property was 117 feet from the street line. The following day the application was rejected.

On March 28, 1957 the D. & H. Plumbing & Heating Co. filed a second application for a plumber's permit together with the plan it proposed to follow. The plan was approved on April 1, but the application for a permit was not acted upon because complainant had not contracted for the work. This plan proposed to install and relocate a six-inch detector check valve with two-inch by-pass water meter inside the basement of another building owned by complainant which was well within the 75-foot limitation. On April 15 of that year the D. & H. Plumbing & Heating Co. submitted to complainant a price of $1,625 for the work. The complainant did nothing further and the city shut off the fire supply. whereupon the instant proceedings were instituted.

On September 27, 1957 the water supply board amended its regulations by substituting for the words "building line"

in Section 2 of the 1945 regulations the words "street line," and at the time the cause was heard in October 1957 the provision read as follows:

> "The property owner shall furnish a proper place for the installation of the meter in a horizontal position not more than seventy-five (75) feet from the street line, just inside and as near as possible to, the point of entry of the service pipe through the building wall. In the event that such a location cannot be provided, the meter shall be installed at the street line in a suitable housing or pit, provided and maintained at the expense of the property owner."

Philip J. Holton, Jr. testified that he had been chief engineer of the water supply board since 1941; that he had previously worked in other capacities; and that he had written the original regulation using the words "building line," but had always considered them synonymous with "property line" or "street line." He stated that since January 1945 he had uniformly enforced the regulation as requiring the placing of meters within 75 feet of the street line and that it had never been questioned until counsel for complainant in the instant cause called it to his attention. The rule was amended, he said, to avoid any future misunderstanding.

Mr. Holton further testified that the previous limit of 50 feet had been extended to 75 feet because many of the newer homes were being built beyond 50 feet from the street line; that this and all other changes were to make the rules uniform wherever possible; and that prior to the enactment of the 1945 regulations the city could account for only 68 per cent of the water used and at the present time the city accounts for 93 per cent. He testified that in this connection the shorter the distance between the meter and the point of supply the more readily leaks could be detected and unauthorized tapping prevented. He further testified that if a leak occurred in the pipe at a point before the water passed through the meter the customer was inclined

to be indifferent about reporting the leak since he did not pay for the lost water while, on the other hand, a leak occurring after the water passed through the meter was promptly reported.

The testimony of the chief engineer and the exhibits show that on September 30, 1944 there were a total of 48,422 water services of which only 717 were unmetered. Out of these 717 unmetered services 481 were fire supplies. The report for the year ending September 30, 1956 shows a total of 57,904 water services, of which only 95 were unmetered and of the latter 40 were fire supplies.

The complainant filed five reasons of appeal but only the following reasons are being pressed:

"First: That the decision of the court and the final decree thereon are against the law;

"Second: That the decision of the court and the final decree thereon are against the law and the evidence and the weight thereof;

"Third: That the finding of the Trial Court and the decree entered thereon that the rules promulgated by the Providence County Supply Board are valid and reasonable and not unconstitutional are in error."

The complainant's first two reasons of appeal encompass the third but also are the basis for its contention that the original regulation requiring the installation of meters not more than 75 feet from the *building line* "was ambiguous, meaningless and impossible to comply with * * *." We are not called upon to determine whether or not complainant is aggrieved in view of the amendment of September 27, 1957, since the trial justice found no ambiguity in the original regulation. He stated that he had always considered street line, building line and property line to mean the same thing. We cannot say that he was clearly wrong. It is not without significance that following the adoption of the regulations in 1945 no other applicant questioned the interpretation given to the regulation by the chief engineer until complainant in the instant case raised the question.

The evidence shows that the meter was to have been installed in the basement of the front building within several feet of where the pipe entered the building. The complainant's argument that under the original regulation it was necessary to consider only the distance from the meter through the wall to the outside line of the building is without merit.

The grounds on which complainant bases its appeal, namely, that the regulation as amended is arbitrary, discriminatory, illegal and unconstitutional, have no reasonable basis in truth and in fact, and are without merit.

The regulation that meters must be installed not more than 75 feet from the street line is admittedly not possible of uniform enforcement because the evidence shows that not all buildings in the city are within 75 feet of the street line, but in our opinion it is not unreasonable or discriminatory. See *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61. The testimony shows that following the adoption of Section 6 of the 1945 regulations the unexplained loss of water was sharply reduced from 32 per cent to 7 per cent. The chief engineer testified that the increase in efficiency is largely, if not wholly, attributable to the metering of fire supplies and the uniform requirement that all meters should be installed not more than 75 feet from the street line.

The complainant argues further that the regulation is unconstitutional and void in that less than 1 per cent of the total number of water users was aggrieved by it. There is no evidence from which it can be determined at what distance in excess of 75 feet a user would have been aggrieved. In the absence of such evidence it avails complainant nothing to show that the percentage of aggrieved users was negligible. We conclude that in the interest of promoting public health and safety and increasing the efficiency of the water system, with resulting benefits to and protection for all users, the regulation is not unconstitutional in that it is reasonable.

The testimony is uncontradicted that since the adoption of the regulation in January 1945 it has been uniformly enforced as far as it was possible. The complainant does not contend that only a portion of the property owners in the city of Providence, whose buildings were more than 75 feet from the street line, was required to comply with the regulation. Therefore it cannot be said that the regulation was discriminatory.

Since we have determined that the regulation is neither unreasonable nor discriminatory, it is of no legal consequence that the board, in the exercise of its authority, abandoned the discretionary regulation promulgated on or about May 1, 1934 by the commissioner of public works, who was superseded by the water supply board. The evidence shows that following the adoption of the 1945 regulation, which was substantially uniform in its application, the operation of the water system was greatly improved.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Fergus J. McOsker,* for complainant.

*William E. McCabe,* City Solicitor, *John T. Walsh,* Assistant City Solicitor, for respondents.